282      LIEB *et al.* *v.* HENDERSON *et al.*     [Sept. T.

Opinion of the Court.

## HERMAN LIEB *et al.*

*v.*

## CHARLES M. HENDERSON *et al.*

1. COUNTY CLERK—*delivery of tax books.* It is the duty of the county clerk to deliver the tax book and warrant to a town collector only when the latter has given bond and taken the oath of office. If this has not been done the book and warrant should not be given to him.

2. PRESUMPTION—*that officers will not violate their duty.* No presumption can be indulged that a public officer will do that which the law forbids him to do.

3. ANSWER—*evidence to overcome.* The sworn answer or disclaimer of a county clerk to a bill for an injunction, clearly showing he does not intend to. deliver the tax book of a certain town to the collector until such collector should give bond and take the oath of office, is not overcome by the testimony of four witnesses testifying to a single conversation of the clerk as to his intention in the matter.

APPEAL from the Circuit Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

Messrs. FULLER & SMITH, and Messrs. GOUDY, CHANDLER & SKINNER, for the appellants.

Mr. JOHN J. HERRICK, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Elaborate arguments have been made on every phase of this case, but on mature consideration a view has been taken that is conclusive of the whole case, that may be shortly stated, and will require the discussion of no principles not well understood.

The bill is for an injunction, and was filed on the 19th day of December, 1876, by a number of tax-payers of the town of South Chicago, against Herman Lieb, county clerk of Cook county, and Michael Evans, collector of taxes for the town of South Chicago, to restrain the former from delivering to the latter the tax collector's books for the year 1876, until the latter shall have executed a bond as such collector in the form prescribed by law, with two or more securities, to be ap-

proved by the supervisor and town clerk, in double the amount of taxes to be collected by him, and conditioned for the faithful performance of his duties as collector of taxes.

Complainants' allege they are tax-payers of the town of South Chicago, and then set forth in their bill the duties of the county clerk in preparing the collector's books; the labor and expense involved in their preparation, and their value; the duty of the town collector to give the required bond before entering upon the duties of his office, and of the county clerk to retain the custody of the books and not deliver them to the collector until such bond is given.

As one ground of relief, it was sought to make it appear defendant Evans was ineligible to the office of town collector by reason of the fact he had been collector of the same town the preceding year, and, as such collector, received taxes in large sums which he had failed to pay over, and that the town had brought suit against him for the alleged deficit, but as it is not insisted upon in argument, we may understand it is abandoned by counsel and may be dismissed without further remark.

Of most importance is the allegation that the collector's books will be ready for delivery to the collector on the 20th day of December, and the county clerk threatens, and intends, and has declared his intention to recognize defendant Evans as collector, and deliver to him the collector's books for the current year, 1876, before he shall have given bond in the amount and conditioned as required by law, with securities approved by the supervisor and town clerk, and has declared his intention to deliver the books to Evans on that day whether he shall have given bond approved by the supervisor and town clerk or not.

It will be observed the bill was filed before the tax collector's books were ready to be delivered to him by the county clerk. Under the statute the collector had eight days after notice the books were ready, in which to present his bond as such collector. No notice had then been given by the county clerk,

284     LIEB *et al. v.* HENDERSON *et al.*     [Sept. T.

Opinion of the Court.

and it could not then be known whether he could give such bond as is required by law, to the satisfaction of the supervisor and town clerk. But Evans made his answer to the bill on the 20th of December, in which he emphatically disclaimed any intention to apply for the collector's books until he had given bond as required by the statutes of the State, and alleged his ability and intention · at the proper time to furnish such bond, and present it with sufficient securities to the supervisor and town clerk for approval, but if they or either of them " unlawfully and without reasonable excuse refused to approve such bond, he intends to present the same to the county clerk or board of county commissioners for such action as they may think proper and lawful." On the 13th day of February, defendant Lieb made his answer to the bill, in which he, with great positiveness, disclaims knowing of any intention on the part of Evans to enter upon the collection of taxes in the town of South Chicago without giving bond as required by law, and denies all charges as to threats or intention on his part to deliver the collector's books to Evans before he had given bond in the amount and conditioned as the law requires. With the exception of some minor allegations, on which no evidence was offered on the trial by either party, what is stated is the substance of the bill and answers. Replications were filed to the answers, and on the 10th of March, 1877, the case was heard on the pleadings and proofs, and the injunction made perpetual.

But little testimony was given on the final hearing of the cause. By consent complainant read in evidence the affidavits of four persons, which had been read to the court on the motion to dissolve the injunction. In substance these affidavits are all the same, and are to the effect that at an·interview with Lieb in his office on the 15th of December, with others present, Lieb stated that the books for the collector of the town of South Chicago would be ready for delivery about the 20th day of that month, and that it was his intention to deliver the books on that day to Evans, and that if Evans should

not be able to give bond as collector, with sureties that would be approved by the supervisor and town clerk, he would not insist on his giving bond so approved before delivering the books, but would deliver them to him upon his giving bond with sureties approved by the county board.

Complainants also read a statement made by Anderson, which, by agreement, was to be considered as a deposition, showing the number of the collector's books for that town, the expense incurred in preparing the same, and the great difficulty that would be experienced in restoring the same should the books be lost or destroyed.

It was admitted complainants were residents and tax-payers of the town of South Chicago. On the part of defendants there was read in evidence the affidavit of Lieb, which had been read to the court on the motion to dissolve the injunction and which it was agreed might be treated as a deposition. In that affidavit Lieb says he did not make the remarks attributed to him in the affidavits of Field and Peck, that he would deliver the collector's warrant and books to Evans if his bond was approved by the county board; that he never so stated and must have been misunderstood, but that what he did say was, if one officer refused to perform a certain duty, that would not debar another officer from performing his own, and that if the supervisor should refuse to approve the bond of the collector, there would be some other authority found that would. This was all the evidence offered by either party on the final hearing.

Waiving any question as to the jurisdiction of a court of equity in the premises, the decision may be placed on the sole ground it is not proved by any satisfactory evidence sufficient to overcome the absolute denial of defendant, that as an officer of the county he contemplated or ever had even the remotest intention to do anything in regard to delivering the tax collector's books that was not his duty to do as defined by law. What Evans may have intended to do is a matter of no consequence, for, if the county clerk did his duty, he could not get

the collector's books and warrant until he had given bond and taken the oath of office as prescribed by the statutes of the State. There is absolutely no evidence the clerk intended Evans should have the books and warrant without first complying with the law by giving the requisite bond, nor until the same had been approved by the proper authority, whatever that might be, whether it was the supervisor and town clerk or the county board. As we have seen, the time had not then arrived for the collector to give his bond, as the tax books were not ready to be delivered, and at that time it could not be known or anticipated the supervisor would refuse to approve such bond as should thereafter be presented to him. The utmost that is attributed to the county clerk in regard to the performance of his official duty in this matter is, that in discussing the subject he expressed an opinion he would receive the collector's bond if approved by the county board, and deliver the tax books and warrant. That was only his understanding of the meaning of that clause of the statute that provides for approving of the collector's bond, that it may be done by the "county board or supervisor and town clerk of said town, as the case may require," in which he may have been mistaken. But he denies making the remarks attributed to him. There is much good sense in the suggestion that if the supervisor should refuse to approve the collector's bond, if it was amply sufficient, some authority could be found to approve it. It would be strange indeed if, by an inferior officer unreasonably refusing to approve the bond of a collector, the collection of the public revenue could be absolutely stopped unless collected by a person of his own selection. But be that as it may, there was no satisfactory evidence given on the hearing of the cause that shows the county clerk, as an officer of the county whose duties are defined by law, contemplated doing anything with the collector's books and warrant by which complainants could be injured in any way. Nor will any presumptions be indulged a public officer will do that which the law forbids him to do. All the testimony in the

case on the part of complainants is that of the four witnesses that heard the same conversation, and surely the disclaimer of defendant under the sanction of an oath ought to outweigh what he may have said as to his intentions as to his official duties in a mere conversation about the matter.

By far the greater portion of the evidence found in this record is that heard by the court on the motion to dissolve the injunction that had been awarded when the bill was filed, but as it relates to issues not raised by the pleadings, it can not be considered. It was addressed to the court to aid its discretion in passing on the motion to dissolve the injunction. At most, it only bears upon a question collateral to the one made by the pleadings and was not introduced on the hearing of the cause.

The final hearing of the case was not had until long after the time had elapsed for giving bond by the collector and for delivering the tax books and warrant, yet no amendment was made to the bill showing such bond had not been given, nor was there any evidence on the hearing as to any bond which it was proposed to give or which was given. So far as the record before us can be considered, it leaves the court free to indulge the presumption that when the proper time for action arrived, the several town and county officers did their duty as defined by law.

Our conclusion is, the temporary injunction was improvidently awarded, and it was error to make it perpetual.

The decree will be reversed, and the cause remanded with directions to the court below to dismiss the bill.

*Decree reversed.*